IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN C. KRAEMER,

                Plaintiff,                  OPINION AND ORDER

v.

                                                          13-cv-860-wmc

HERMAN E. HOFFMAN, JR.,

                Defendant.

In this civil action brought under Wisconsin law, plaintiff John C. Kraemer alleges that defendant Herman E. Hoffman, Jr. breached their written, feedlot agreement by failing to make payments due for Kraemer's care of Hoffman's cattle. Before the court are three motions. The first two are related: plaintiff seeks entry of default, because of defendant's failure to answer the amended complaint (dkt. #7); and defendant seeks additional time to answer and has filed a proposed answer to the amended complaint (dkt. #11). In the third motion, defendant seeks a preliminary injunction barring plaintiff from selling the cattle pursuant to a possessory lien under Wisconsin statutory law. (Dkt. #13.) For the reasons that follow, the court will deny plaintiff's motion for entry of default and grant defendant's motion for additional time to answer subject to certain limitations described below. The court will also award plaintiff his attorney's fees for having to bring the default motion. The court also held a hearing on defendant's motion for preliminary injunction on April 2, 2014, during which it denied defendant's motion for the reasons stated on the record and more thoroughly explained below in this opinion.

BACKGROUND

Plaintiff John C. Kraemer and defendant Herman E. Hoffman, Jr. entered into a written "Feedlot Agreement" on February 10, 2012, in which Kraemer agreed to "feed cattle owned by Hoffman in building and land operated by Kraemer for" the period February 17, 2012, through August 31, 2012. (Compl., Ex. A (dkt. #1-2) 6.) In exchange for Kraemer's services, Hoffman agreed to pay based on certain agreed rates, with Kraemer billing Hoffman on a monthly basis. (*Id.* at 1.) Plaintiff represents that: (1) this agreement was then renewed, (Pl.'s Opp'n (dkt. #17) 2); (2) defendant has been delinquent on payments due under the contract since at least October 2012; and (3) the defendant has made no payment for feeding and housing his cattle since September 2013. (*Id.* at 2, 3.)[1]

Plaintiff filed a five-paragraph complaint in the Circuit Court for Jackson County, Wisconsin, where the subject cattle and his building and land are all located, on November 6, 2013, alleging a simple breach of contract claim, and seeking $115,568.07 in damages, plus pre-judgment interest and costs. (Compl. (dkt. #1-2).) Defendant filed an answer to that complaint, admitting all of the allegations concerning liability, including his "owing money to Plaintiff, but denie[d] the amount alleged." (Answ. (dkt.

---

[1] In his proposed answer to the amended complaint, defendant admits that "no payment has been made since September 13, 2013." (Def.'s Proposed Answ. to Am. Compl. (dkt. #11-2) ¶ 15.)

#1-3).)  On December 17, 2013, defendant also removed the action to this court pursuant to 28 U.S.C. § 1332.[2]

On February 28, 2014, plaintiff filed an amended complaint, containing additional allegations -- most notably that plaintiff has a lien on defendant's livestock in plaintiff's possession pursuant to Wis. Stat. § 779.43 -- and asserting five causes of action, the breach of contract claim, plus quasi-contract claims, and a claim for "account stated."  (Am. Compl. (dkt. #6.)  In the amended complaint, plaintiff seeks damages in the amount of $185,883.62, representing services provided through January 2014.  (*Id.* at ¶ 16.)  Pursuant to Federal Rules of Civil Procedure 15(a)(3), 6(d), 5(b)(2)(E), and 5(b)(3), defendant had 17 days to answer this amended complaint, making his answer due on or before March 17, 2014.  On March 24, 2014, defendant having failed to answer, plaintiff filed a motion for default.  (Dkt. #7.)  The next day, March 25, 2014, Attorney Christopher A. Beck moved for admission pro hac vice and filed a motion for leave to file defendant's answer to the amended complaint.  (Dkt. ##10, 11.)

On March 27, 2014, defendant also filed an emergency motion for preliminary injunction, seeking an order:  barring plaintiff from selling defendant's cattle on April 3, 2014; directing plaintiff to release defendant's cattle to him; or, alternatively, directing the proceeds of any sale be deposited in a trust pending the outcome of this litigation. (Dkt. #13.)

---

[2] There is complete diversity between the parties:  Kramer is a citizen of Wisconsin, and Hoffman is a citizen of Texas.  The amount in controversy exceeds $75,000.

OPINION

**I. Plaintiff's Motion for Default; Defendant's Motion for Leave to File Answer**

In support of defendant's motion for leave to extend the time to answer and a proposed answer to the amended complaint (Dkt. #11), his new counsel, Attorney Christopher Beck, contends that: (1) as "lead" counsel, he was never served with the complaint; (2) plaintiff failed to attach a certificate of service to the amended complaint; (3) defendant's failure to file timely was "not due to conscious indifference, but due to an accident or mistake;" and (4) plaintiff has not been prejudiced by defendant's 11 day delay in filing. (*Id.*)  While the court rejects all but the last of these excuses, the court will nonetheless grant leave with one important caveat.

Turning to defendant's reasons, *first*, at the time plaintiff filed its amended complaint and at the time the answer to the amended complaint was due, defendant's counsel of record (regardless of whether categorized as "lead" or "local") were Attorney Justin Peterson and Attorney Daniel S. Diehn.  According to the mailing information for this case, both attorneys are "filing users."  W.D. Wis., Electronic Filing Procedures, IV.D, available at http://www.wiwd.uscourts.gov/electronic-filing-procedures (defining service on a filing user).  Under the court's procedure, "[r]eceipt of the NEF constitutes service of filed documents upon each party in that case who is registered as a Filing User."  *Id.*  Attorney Beck was not listed as counsel of record in this case until *after* plaintiff had filed his amended complaint and *after* the answer to the amended complaint was due.  In light of Attorney Beck attending the telephonic preliminary pretrial conference on January 30, 2014, perhaps plaintiff should have provided a courtesy copy

4

to him, but plaintiff was under no obligation to do so, especially in light of plaintiff's counsel's representation that Attorney Beck "consistently failed to respond to several attempts by me to contact him regarding this matter since February 1, 2014," and Attorney Peterson's alleged representation on March 13, 2014, that Peterson "was taking over as lead counsel for Hoffman." (Affidavit of Attorney Richard A. Radcliffe in Opp'n to Late File Answer (dkt. #16) ¶¶ 2-3.) Regardless, there is no dispute that the other two attorneys of record for defendant, Attorneys Peterson and Diehn, were served the amended complaint on February 28, 2014, and defendant offers no basis why plaintiff's failure to serve yet a *third* attorney who had failed to enter even an appearance in this case excuses defendant's failure to answer timely.

*Second*, defendant complains that plaintiff failed to file a certificate of service with the amended complaint and with the motion for default. This argument too runs counter to the court's procedures:

> A separate certificate of service is not required for documents filed electronically on ECF and served on Filing Users by an NEF. The NEF is deemed the certificate of service for purposes of Rule 5(d)(1), Fed. R. Civ. P. A separate certificate of service is required only for documents filed with the court and served other than electronically through ECF.W.D.

Wis., Electronic Filing Procedures, IV.D, available at http://www.wiwd.uscourts.gov/electronic-filing-procedures.

*Third*, defendant states that its failure to answer timely was "not due to conscious indifference, but due to an accident or mistake." (Def.'s Mot. for Leave to File Answer (dkt. #11) ¶ 6.) Defendant, however, fails to provide any explanation for the accident or mistake. Perhaps there was some confusion between defendants' counsel as to who was

5

responsible for answering the complaint, but defendant does not even bother to explain and this court will not manufacture an excuse.

*Fourth*, defendant argues that its delay in answering the complaint does not prejudice the plaintiff. On that, the court reluctantly agrees. In light of the fact that defendant filed a timely answer to the original complaint and participated in the court's preliminary pretrial conference, the court does not believe that the drastic sanction of default is warranted here. *See Sun v. Bf. of Trustees of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007) ("Although a district court has the default judgment readily available within its arsenal of sanctions, it is a weapon of last resort, appropriate only when a party wilfully disregards pending litigation." (internal citations and quotation marks omitted)).

While the court will, therefore, deny plaintiff's motion for default (at least at this time and on this basis) and grant defendant's motion for extension of time to file an answer, defendant is on notice that further lapses will not be tolerated. In addition to failing to answer the amended complaint timely, plaintiff also represents that defendant failed to provide his Rule 26(a)(1) disclosures, which are now more than 30 days late. (Radcliffe Aff. (dkt. #16) ¶ 4.) Moreover, plaintiff has submitted correspondence to Attorney Beck, dated March 5, 2014, advising that a sale of the cattle has been scheduled for April 3, 2014. (*Id.*, Ex. A (dkt. #16-1) 4.) Despite this notification, defendant waited until March 28, 2014 -- more than three weeks later -- to file for emergency relief in this court. Based on these transgressions, the court will require defendant to pay plaintiff his reasonable attorney's fees in bringing the motion for default.

The procedural posture of this case begs another question: can defendant deny liability in the amended complaint in the face of his clear admissions of liability in his answer to the original complaint? While the amended complaint contains new allegations and asserts new causes of action, defendant's proposed answer denies paragraph 14, which alleges that "Defendant breached the Feedlot Agreement, as amended with the Plaintiff by failing to make payment when due." (Def.'s Proposed Answ. to Am. Compl. (dkt. #11-2) ¶ 14.) Perhaps defendant's dispute is to plaintiff's allegation that the Feedlot Agreement was amended in late summer or early fall 2012 and again in March 2013 -- allegations made for the first time in the amended complaint -- but to the extent defendant now belatedly seeks to deny that he has breached the Feedlot Agreement, he is foreclosed from doing so in light of his earlier admission. *See Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005) (holding that the City's answer in the complaint admitting an alleged fact "constitutes a binding judicial admission") (citing *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are not evidence at all but rather have the effect of withdrawing a fact from contention." (internal citation and quotation marks omitted)).

## II. Defendant's Motion for Preliminary Injunction

On Friday, March 28, 2014, defendant filed an emergency motion for preliminary injunction seeking an order from this court blocking a sale scheduled for April 3, 2014, of

7

some of defendant's cattle. In brief, defendant argues that he is entitled to an injunction because (1) the cattle at issue are not "ordinary, fungible cattle," but instead are of "top pedigree and quality" and are "irreplaceable," and as such, their sale would "ruin" Hoffman's business; (2) Hoffman's harm is greater than Kramer's harm because the sale will put him out of business; (3) Hoffman has some likelihood of success on the merits because of his proof that "many of the plaintiff's bills were trumped up to include services not agreed for;" and (4) there is no indication that the injunction will harm the public interest. (Def.'s Br. in Supp. of P.I. (dkt. #14) 4-6.)

Normally, the court would set forth the parties' proposed facts, but defendant failed to follow this court's procedure on motions for injunctive relief,[3] requiring a statement of facts consisting of separately numbered paragraphs. Before yesterday's hearing, the parties did file a set of stipulated facts, which the court adopts and includes as Attachment A to this opinion. The court also sets forth other material facts (in addition to those already described above in the background section) in its discussion of the elements for injunctive relief below.

### A. Standard for Injunctive Relief

To win a preliminary injunction, "a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Am. Civil Liberties Union of Ill. v. Alvarez*,

---

[3] Available on the court's website at
http://www.wiwd.uscourts.gov/sites/default/files/Injunctive_Relief.pdf.

679 F.3d 583, 589 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011) (internal quotations omitted)). If the moving party makes this initial showing, then "the court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.*

### B. Likelihood of Success on the Merits

Defendant argues that he is likely to succeed on the merits because he contests amounts charged in the invoices starting in September 2012, attaching an exhibit purporting to list contested issues for each invoice. (Affidavit of Herman E. Hoffman, Jr. ("Hoffman Aff."), Ex. D (dkt. #14-5).) In light of the injunctive relief sought by defendant -- an order blocking the sale of his cattle -- the proper question is not whether defendant can come up with possible disputed issues of fact, but rather whether he is likely to succeed in his argument that plaintiff does not have a lien on the cattle at issue and, therefore, has no right to foreclose on that lien pursuant to Wis. Stat. § 779.48 and Article 9 of the U.C.C.

In seeking a sale of the cattle, plaintiff relies on Wis. Stat. § 779.43(3) for his claim of a "possessory" lien, which provides in pertinent part:

> [E]very keeper of a . . . boarding stable, and every person pasturing or keeping any . . . animals, shall have a lien thereon and may retain the possession thereof for the amount due for the keep, storage or repair and care thereof until paid.

Another statutory provision in the same section of Wisconsin Statutes then provides the procedure for enforcing the lien, cross-referencing Article 9 of the U.C.C.:

9

> (2) Every person given a lien by . . . 779.43(3) may in case the claim remains unpaid for 2 months after the debt is incurred . . . enforce such lien by sale of the property substantially in conformity with subch. VI of ch. 409 and the lien claimant shall have the rights and duties of a secured party thereunder. When such sections are applied to the enforcement of such lien the word debtor or equivalent when used therein shall be deemed to refer to the owner of the property and any other person having an interest shown by instrument filed as required by law or shown in the records of the department of transportation, and the word indebtedness or equivalent shall include all claims upon which such lien is based.

Wis. Stat. § 779.48(2).

Defendant does not argue that Article 9 does not apply, nor that plaintiff has failed to satisfy the requirements of Article 9 in the event that a lien exists. Rather, defendant argues that plaintiff does not have a lien on the cattle because of the following language in the parties' Feedlot Agreement:

> John Kramer . . . shall not claim any ownership right, interest or place levies, mortgages or liens on Hoffman's property or Herman Hoffman personally.

(Compl., Ex. A (dkt. #1-2) 8.)  As such, plaintiff's ability to sell the cattle turns on whether the contractual language waives any right to a statutory lien.

In response, plaintiff posits several arguments for disregarding the language in Section F of the contract, including that he could not have waived his right to a statutory lien because the lien did not exist at the time the parties entered the contract, any waiver would not have been knowing, and the language in Section F conflicts with certain language in Section C, which allows Kraemer to maintain possession of half of the cattle if invoices are unpaid.  While the court remains skeptical of these arguments, plaintiff

has demonstrated by overwhelming evidence that defendant was in material default under the contract since at least late fall 2013, by failing to make *any* payments. Such conduct by defendant constitutes a material breach, which, in turn, opens the door to plaintiff's rescission of their contract. *See Seidling v. Unichem, Inc.*, 52 Wis. 2d 552, 554, 191 N.W.2d 205, 207 (1971) (explaining that a "breach so serious as to destroy the essential objects of the contract" provides a basis for the nonbreaching party to rescind a contract). If the contract is properly rescinded, then there is no bar to plaintiff's claiming a possessory lien under Wis. Stat. § 779.43(3), and, in turn, enforcing that lien pursuant to Wis. Stat. § 779.48 and Chapter 409 of the Wisconsin Statutes (Wisconsin's codification of Article 9).

In laying out this theory, the court is not definitely determining that rescission is the plaintiff's only option for asserting a lien. Plaintiff is welcome to argue that ambiguities in the contract allow him to stand on the contract and still assert a lien. Moreover, defendant may challenge the claim that his failure to make payments constituted a material breach, by standing firm in his assertion -- however implausible -- that the amount he owed somehow decreased (and eventually turned into a credit) despite his failure to make payments of any amount due under the contract. (Def.'s Br. in Supp. of P.I., Ex. D (dkt. #14-5).) Rather, the court finds plaintiff has the upper-hand in asserting a lien on the cattle, and is highly skeptical of defendant's likelihood of success on the merits as to this particular issue.

### C. Irreparable Harm

In addition to having a weak case on the merits, the court also finds that Hoffman has failed to make a threshold showing of irreparable harm. Hoffman avers that sale of the cattle "would ruin his business" because "[t]his herd represents the primary machinery generating Hoffman's profits." (Def.'s Br. in Supp. of P.I. (dkt. #14) 4 (citing Hoffman Aff. (dkt. #14-1) ¶ 11.) This assertion is belied by defendant's admission that he has left the cattle with Kraemer, failing to make any payment for their feed and care as required under the contract since early fall. It is also contradicted by the representations of Trans Ova -- another secured creditor -- that Hoffman has failed to make any payments as required under *its* contract since August 2012 (Affidavit of Trans Ova Genetics (dkt. #21) ¶ 13), making the sale of the cattle appear inevitable.

Nevertheless, Hoffman persists in challenging the proposed sale in Wisconsin, rather than in Texas, on the basis that the Texas market would appreciate the true value of these animals, as compared to "plaintiff's planned auctions in Wisconsin" where "these prized animals" would sell "as if they were common livestock, for common livestock prices." (Def.'s Br (dkt. #14) 2.) In response, plaintiff submits an affidavit from Rod Knudtson, the market managers of Equity Cooperative Livestock Sales Association and the entity hired to sell the cattle. (Affidavit of Rod Knudtson (dkt. #20.) In the affidavit, Knudtson explains Equity's business model, describes the cattle for sale in the planned April 3, 2014, auction, and avers that "[a]ll beef cows and beef calves identified above will be sold in a commercially reasonable manner." (*Id.* at ¶ 14.)

Knudtson also represents that Hoffman has used Equity's services before to sell heifers cared for by Kraemer. (*Id.* at ¶ 15.)

In light of this record, the court finds that Hoffman has failed to demonstrate that his cattle will be sold for less than fair market value or that he will otherwise suffer irreparable harm if the injunction is denied.

### D. Balance of Harms and Public Interest

In light of the court's finding that Hoffman has failed to make the threshold showing of some likelihood of success on the merits and irreparable harm, the court need not consider the last two elements argued by Hoffman: balance of harms to the parties and the public interest. Still, both of these factors also weigh in favor of denying injunctive relief. Hoffman has materially defaulted for half a year already by failing to make payments due under the contract, forcing Kraemer to incur substantial expense to care for and feed the cattle without compensation. Denying the injunction allows the sale to go forward, which in turn would provide compensation to plaintiff for at least some of his past care and feeding of the cattle, and at least put an end to some of the mounting, ongoing costs.

While the court is satisfied that defendant has not met his burden of showing his need for injunctive relief, the court will place certain restrictions on the proceeds of the sale in an attempt to ameliorate any even arguable harm to defendant and protect his interests. During the hearing, the court determined that defendant owes plaintiff a minimum of $60,000 for his failure to make any payments since September 2013.

13

Accordingly, the court will allow plaintiff to retain up to that sum from any proceeds of the sale. The remaining amount shall be paid into the court and held in escrow.

ORDER

IT IS ORDERED that:

1) plaintiff John C. Kraemer's motion for entry of default (dkt. #7) is DENIED;

2) defendant Herman E. Hoffman, Jr.'s motion for extension of time to file an answer to amended complaint (dkt. #11) is GRANTED, the proposed answer shall be deemed filed and served as of yesterday, April 2, and plaintiff may have ten days to answer, move or otherwise respond;

3) defendant shall pay plaintiff his reasonable attorney's fees in bringing his motion for default and in responding to defendant's motion for extension of time to file an answer. On or before April 17, 2014, plaintiff shall submit an affidavit and any supporting materials demonstrating the amount of fees incurred on these two motions. Defendant may have one week from plaintiff's filing to object; and

4) defendant's motion for preliminary injunction (dkt. #13) is DENIED, except that plaintiff may receive only up to $60,000 from the proceeds of the sale of the cattle sold with the remainder to be deposited into this court as follows: the check shall be made payable to the Clerk of Court and shall have the case number written on the check, as well as noted in the cover letter to the court; and

5) these funds shall be held in escrow by the clerk pending further direction of this court.

Entered this 3rd day of April, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge